Reflect I recuse in Dwayne Morris cases so this this favoritism is not something that will affect cases before me. All right we'll call our case for the afternoon United States versus Quintel Reynos. Good afternoon may it please the court my name is Megan Scheib and I'm here on behalf of the appellant Quintel Reynos. You can just put that just down a touch thank you. What's the test? Are you reserving rebuttal time? Yes with with the court's approval I'll request three minutes rebuttal time. What test do you determine whether there's been an abduction here? Judge Ambrose the the standard we would advocate for this court to adopt is that the forced movement between two locations is not sufficient to warrant an abduction. There must be facts of forced accompaniment rise elevating the circumstances above that which is inherent in. And you're saying that there's nothing that shows the accompaniment from the bathroom to the to the cash register? Correct here well there was a is it the force or the accompaniment that you're arguing didn't occur? The second. It's it's our position that forced accompaniment a forced accompaniment is required under the definition of the guidelines and as interpreted by the other circuits who have addressed the abduction. If someone has a gun and says if you don't come out of the bathroom I'm gonna start shooting people come out of the bathroom and walk presumably walked with the person who has the gun to the cash register. Is that what happened? There's no evidence to suggest they walked with the person. The facts of record show that they did walk 34 feet from the bathroom to the cash register. One employee at that time which I think is relevant here walked immediately out the front door Julian Castillo and the other two did end up at the cash register. To facilitate the mission of the crime. In order to obtain money from the cash register. However if you look to other cases and the facts that they rely upon and in fact their entire analysis focuses on is the forced accompaniment. It's different than just actually just parse it seems like there's three things as I there's force there's accompaniment and there's a change of location from different locations. Here I mean there's not much doubt that there I mean use of a gun qualifies as as force to threaten to use it. I thought what you were saying in your brief was that there wasn't any indication in the plea memorandum or anything else that there was actual accompaniment and that within the same the short distance within the same location does not is not equivalent to what the guidelines contemplated as a change or in location or a different location. That's correct Judge Amber we we in our brief articulated that there was no evidence of accompaniment just to point you to another case United States versus Osborne from the Fourth Circuit which the government in its brief characterized as virtually identical facts to this case but if you look closely what facts constituted the forced accompaniment there and you have a defendant approaching a pharmacist and at knife point forcing them into the back of the pharmacy at knife point obtaining a second pharmacist and then forcing those two pharmacists to walk immediately before him guiding their every step there was witness testimony describing that he constructed this is the case we walked him throughout the store all and all the way to the front door but one of them wouldn't go out correct and there the Fourth Circuit's affirming the abduction enhancement focused on the use of the victims as human shields as hostages in a sense and also in Osborne didn't have to go through a door that was only accessible via keypad yes a secure door accessible only via keypad and then further into the back room where he believed the narcotics were stored. What are you contending happened here? Here all we have is the forced movement out of the bathroom the 34 feet to the back of the bathroom. Are you suggesting that Reynos did not accompany them? Did not walk to the cash register with these people who came out of the bathroom? There's no evidence about what occurred between points A and point B. Did Mr. Reynos also walk to the register? Yes. But did he do so in a way that implicated the aggravating factors that warrants abduction? No. The the victims were not used as shields. There's no evidence that they were used as hostages. Excuse me? Shielding and hostaging is not a requirement is it? It isn't a requirement but the aggravating factors must be present to change mere compulsion that's present in almost every robbery into a more harmful a more onerous scenario that would warrant the four-level enhancement and looking to example another case within the same confines United States versus Hawkins there you have one of the victims being dragged by their hair you have another victim who's being shoved with a sawed-off shotgun pressed in their gut these are clearly aggravating factors demonstrating the accompaniment that implicates a harm greater than that which is inherent in almost every robbery so it's forced accompaniment not the location aspect that you're focusing on no we also challenged the location aspect both parties in this case endorsed the language from United States versus Hawkins and and in that in that case the locations is flexible and subject to multiple interpretations which are to be applied case-by-case to the particular facts under scrutiny and here while in the most narrow technical sense of the word the bathroom is a different location than the register in the context of abduction we do not believe those two points within the same between the register and the bathroom is that an he went to there were three people in the bathroom come on out so he had a gun and they come out and they as I understand the facts they went up to the register he then said where's the key to get out the back door the employee told him he Reynolds only Reynolds went out looking for the key didn't find it ultimately shot the lock off in the back door and the three employees walked out the front door right with one correction one of the one of the three employees walked right out the front door immediately upon exiting the bathroom and two of the employees walked to the cash register which again evidencing no physical control or forced accompaniment by mr. Reynolds of the employees so my question was the distance between the is it an open space between the register and the bathroom there is a counter like in a typical pizza parlor that divides one side of the room from the other and with respect to the physical dimensions of this store the 34 feet just to give this court perspective I had the occasion to come into this courtroom and from the wall to my right to the wall to my left is 40 and one-half feet so the distance traversed by the victims in this case was less than this wall to that wall and when when taken into consideration with the absence of any facts rising this movement which really is inherent in every robbery rising that to a level that placed the victims in increased harm warranting a severe penalty such as the four level enhancement well I back up on the forced accompaniment issue um judge Goldberg found that there was forced accompaniment and that he said I think that was what occurred you had a forced accompaniment mr. LeBron has indicated from the bathroom to cash register and I find government has proven exactly what I just read by a preponderance of the evidence and more now that's a fact finding is it not do it would we have to find that that's clearly erroneous no your honor we believe the plenary standard of review applies to the entire appeal in this case because the essence of our challenge is to judge Goldberg's legal interpretation of abduction and that includes his interpretation of what it means what forced accompaniment means under the guidelines I don't know that that is legal I don't know that that isn't factual well if your honor is so inclined to apply the clear error standard here if you look to what facts were presented below judge Goldberg made that finding in plain error in that there were no facts to substantiate what occurred between point A and point B and it's our position that the mere compulsion the movement between two points is not enough to warrant the abduction enhancement do we have exactly what the testimony was as to how they got from the bathroom to the cash register no your honor there was no government does characterize it he forced mr. Gutierrez to the cash register open it there was no testimony offered below the only the only facts that we have here are from the rule 11 colloquy which can be found at appendix volume 2 page 117 and you'll see in those facts you have the garden variety hold up at the bathroom and then they jump there's there's a gap in the fact I mean it defies common sense that they then show up with the robber I mean with Reynos at at the cash register even how was that supposed to happen they went out for lunch even assuming one went out the front door we're not denying that the logical inference can be made that Mr. Reynos walked with them or near them towards the register but we're saying that is not forced accompaniment as contemplated under the guidelines and Judd Nygaard may recall a case from 1999 out of the Third Circuit that dealt with physical restraint US versus Copenhaver yeah this is not a physical restraint case that's that's sort of the opposite of what we're talking about it is but in the physical restraint cases they involve almost all of them forced movement between rooms within a single yeah that that's where you're putting somebody in an area and you're confining them and saying don't leave whether it be that case Greenstein or Copenhaver it's very different I see that my time is nearing an end I just want to touch on some policy reasons why this court should support the appellant's position here if you look to the four level enhancement and you see the other provisions that the guidelines have I think demonstrate why here we do not have facts that rise to the level warranting this severe punishment for example in a minor assault case if the offense resulted in substantial bodily injury unto a victim under the age of 16 increased by four levels if the victim sustained permanent life-threatening injury in kidnapping increased by four levels and here we have a level enhancement here is under the sentencing guidelines the range you would get changes by how much if you deduct four levels in this case it changes by 13 months but if for example this were applied to another defendant at the base offense level of 20 the range would go up 18 to 22 months and if they were in a criminal history category 2 it would go 20 to 25 months so we're talking about a substantial penalty based on the act of walking from the bathroom to the register but it's also taking someone forcibly so as to facilitate the commission of an offense so it's not it's using a person that you find at the scene and forcing them to help you commit the offense so whether it's you know it's not garden variety walking you know down the street there there's some compulsion the idea of using someone else to further your goals and what that what that means to that person what it means to society that someone a law-abiding citizen is used in this way so I don't think I don't think the policy necessarily means that we should give it a narrow reading. I see I'm out of time may I answer your question and conclude briefly? Thank you. Respectfully I think the base offense level for robbery at 20 already accounts for the type of conduct that occurred here which is the compelled movement not abduction as that term is interpreted by all the other circuits to have addressed this and respectfully your honors Mr. Reyno's sentence here was increased one year and one month based on the mere movement between a bathroom and a register in a space shorter than this room wall-to-wall. Accordingly we ask that this court reverse the district courts application of the abduction enhancement and remand for resentencing. All right thank you. We'll hear from you back on rebuttal. Thank you. Good afternoon may it please the court Robert Zausman on behalf of the government. This was not a mere movement as with respect to my friend Ms. Schein. What do we have in the record about what it was? What we have is that and she is correct the factual basis was stated on page 117 of the appendix and Mr. Reynos explicitly agreed to these facts and that and the key paragraph is there and it begins and says thereafter the blackmail started to kick in the bathroom door gained entry and said he needed one of them to open up the cash register or I'll start shooting. So what we have here again is not mere movement we have three employees. Do we know that he accompanied one of the at least one of the employees? What we do know is at least one of the employees did go to the front walked out the door. Two employees were left. Do we know where they were? Yeah well I would say your honor all three went to the cash register. Let me talk real quickly about that point about the other person. That's raised for the first time in the defendant's reply brief and the only citation given for that idea that one of the people immediately went out cites to the defendant's sentencing memorandum. Let's see what was there that said that he walked with them. I mean I mean you're thinking logically he probably did but what is there in the record that says that he walked with them? There is no statement in the record that says that he after they came out of the bathroom walked with them to the front cash register the 34 feet or so. There is no statement in the record that he walked with them using exactly those words but let me address what is in the record. What is in the record is what first what I just said he kicked in the bathroom door they had locked themselves in the bathroom seeking shelter he kicked in the door and said I need one of you to go to the cash register or I'll start shooting. The next thing that the prosecutor said that the defendant agreed to is quote at Reynos's demand Gutierrez opened the cash register and then it says Reynos took the money in the cash register and then stated do you have any more money? Reynos started to search Gutierrez and finally it says Reynos then moved toward the back of the shop and at that point all of the employees ran out the front door of the shop. So what do we know from all this? We know what's stipulated is that they're together at the bathroom at which point Reynos is kicking in the door and saying someone goes with me to the cash register. They're together at the cash register that's where Reynos demands that Gutierrez give him money and even physically searches him. So he's doing the robbery right there okay. Right the employees feel some compulsion to stay there because they don't run until Reynos goes the other way. Maybe one of the employees doesn't feel compulsion. Maybe one doesn't but that's really immaterial because all that really matters is that he's forcing one of them. So what the district court concludes from those facts is that he forced them to accompany him to the cash register. On this record we respectfully submit that cannot be cleared. And then after that I think that's it. I thought what he asked was where is a key to the back door. One of the employees tells him where the key or the employee thinks the key is and he Reynos goes to that area where he's told that the key would be without anybody being with him and while he goes to that back area the other two just go out the front door. All the employees. All the employees are gone by that time. Well that's right and in our position is that that supports the government's position. In other words he forced them to accompany him to the cash register to accomplish the robbery. Once he gets what he wants, which is the little bit of money that's in the cash register, he then makes his escape and does not use them. Why isn't this case like the Seventh Circuit case in Eubanks? Eubanks adopts what your opposing counsel said the Fifth Circuit adopted in Hawkins and that is it's a flexible case by case analysis. You could be in the same building and still move to a different location such as you had in Osborne. But you also like in Eubanks, whether it be the beauty supply store or the jewelry store, you could be in the same building and not have an abduction even if you have forced accompaniment because it's not that significant or not that different a location. Why isn't this case like Eubanks especially with respect to the beauty supply store? Well what makes this very different is the fact that they've locked themselves in the bathroom. As Judge Goldberg said, they've reached a place of safety. They're using their cell phone to call the police and he forces his way into the bathroom to remove them and get them to help him facilitate the robbery. Nothing like that. I'm not saying that I endorse the decision in Eubanks because the Fifth Circuit has questioned it. But we don't need to go there because this is so factually distinct. Eubanks is dealing with two situations. One, a person being dragged six feet within a room. Even in Osborne and the other cases, Hawkins and whatnot, it was use of people for the purpose of getting your escape. Certainly in Osborne. And they said that's what the enhancement was there for, to get people out of harm's way. Here it looks like this individual unilaterally made a decision just to let people go. He just let them literally walk out the door. I strongly disagree with that, Your Honor. And I think what would be very helpful is... Did he take anybody with him to the back? No, Your Honor, but this isn't a hostage case. If I could explain, Your Honor... He committed the crime of robbery without a doubt. One of the problems we're having in this argument, I think, is that there are separate elements to this. And we're moving back and forth among the elements that need to be addressed distinctly. You mentioned, I think, three when Your Honor was questioning Mishai. Forced accompaniment to a different location. I see four elements. The four are forced accompaniment. That's two right there. Needs to be forced, needs to be accompaniment. The third is a different location. Needs to be to a different location. And the fourth is the purpose. The guideline says it's for the purpose of facilitating the offense or escape. So those are the four things we have to establish. And we've been moving around. And with Your Honor's most recent question regarding letting them go, again, the purpose has to be facilitating the offense or escape. We're not saying that he moved them... They had facilitated the offense by the time they emptied the cash register. Exactly. It absolutely facilitated the offense to get... I think Eubanks actually notes that in Osborne it was to facilitate, whereas retrieving the surveillance video was not, in the Eubanks case, was not a facilitation of the... Right. And that's something that we might beg to differ on. But here, he needs these people to get in the cash register. And not only that, but he also... Let me ask you this question. Put yourself in our position. When is there not an abduction when you come in and rob a place and you have somebody move, like an employee at a bank, a teller move from the teller station to the vault to pull money out? Is that an abduction? Let's say the vault's right behind the teller. It's 20 feet behind them. I would say no. I would say that's not our case. But let's put ourselves in the position of those men in the bathroom who have secured themselves and tried to... A man at midnight, dressed all in black with a black mask, comes in the store, locks the front door. They run for the bathroom. They lock themselves in the bathroom. He goes, kicks it in, and at gunpoint tells them, somebody's coming with me to the cash register. That's terrorizing these employees. That's what the guidelines... How do you deal with your opposing counsel's point that that's included in the robbery? But it's not, because if you could have the more common robbery of a pizza shop, unfortunately, this person walks to the front door, points a gun, and says, give me what's in the cash register. There is extra harm here and extra terror that's being caused because of the way this robbery played out. And this is what the guidelines do. They have separate factors to address... You need to help me here. If a teller walking from the teller window to a vault to get money to give to a robber, and the vault is directly behind the teller 20 feet away, if you're saying that that is not abduction, but people in this case walking 34 feet to empty the cash register, that is, what's the difference? No, Your Honor, I'm saying we need to look at the facts of each case. If somebody jumps the teller counter, grabs the teller at gunpoint, forces the teller to move into the vault, then I think I probably would be here arguing that it's an abduction. If the person merely stood there and said, I'd like you to turn around, go to that vault, grab the closest stack of money and bring it back to me, that would be a harder case in order to apply the... Do we know, based on the plea memorandum, what actually happened here? Because what you read on page 170, he may have said, look, go up there and get the money, and he starts walking with them, but one of them walks out, may have walked out the door, and eventually all three walk out the door. I mean, this is not the best set of facts for where you're... I just don't agree. I think if you look at the fact that they did go to the cash register and empty the cash register, and that they then left at the first opportunity to leave... So you think this is the best set of facts you can have? Well, of course not. I deal with the case that's presented to me. But I do think, Your Honor, that this is a very strong set of facts. I don't think... And, of course, the most important thing here is the standard of review. The standard of review, I would submit, is not plenary. This is a factual determination as to whether he accompanied them... Aren't we being asked to determine what is an abduction under the sentencing guidelines? Yes. To the extent it's a mixed question of law and fact, this Court has to determine what does a different location mean, what does accompaniment mean. But the argument that's being presented to Your Honors is that, yes, he forced them at gunpoint to go to the cash register. Yes, he went with them to the cash register, but factually there are no facts that he was with them the whole 30, 40... For example, the first question I asked your opposing counsel was, what test should we use? If it is the Hawkins, Eubanks type of test, the flexible case-by-case, now that's plenary, deciding what test to use, right? Correct. So... Now, again, this is where we start to bounce among the different factors. What's interesting, this appeal was originally presented, and certainly in the District Court, where the main emphasis of the defense was on whether there was a different location. And that's where Hawkins and Osborne and all these cases were emphasized. The defense has sort of moved off of that. Usually what you see is, you know, inside a facility to outside, although one you had from one area of a parking lot to another, from a van to a truck. Eubanks is inside, inside, but... And Johnson is inside, but again, in terms of... Osborne's inside, inside. And Osborne's inside. In terms of being inside, again, I don't think this is a difficult case where you have a separate locked room that they've tried to lock to stay away from the gentleman. Originally, that's what this argument was about. That's what the defendant's principle brief and our brief mainly focuses on. I mean, this is a small pizza parlor. This is not a big Walgreens store like you have in Osborne. Well, it's... I don't know. You know, I think the distance here is actually considerable that's been referenced. If you look at the video, which the District Court did, you have the counter and then you go down a narrow hallway and make a little turn and then get to the restroom. He had to go take them out of this secure location. So in terms of the different location part, which is really what Hawkins is talking about, and we embrace the standard in Hawkins, this is a different location. So we've moved on then to say, is it forced accompaniment? And that's where I've suggested that the standard of review is clear error because the District Court knows these facts. The judge knows that. He tells them, go with me to the cash register. He winds up with them at the cash register. And if I could use a quote from Judge Reddell's question, it defies common sense. This court would have to find that it was clear error for the district judge, knowing these facts, to conclude he also went with them along that 34-foot distance, that we have to assume. But then don't we, as a matter of, I don't know, I would have thought law, I would have to say going that 34 feet from the bathroom through an open space to the cash register is as a matter of law an abduction under the sentencing guidelines. Again, you have to go through the factors, and I think the ultimate answer would be yes, it's an abduction. Because it's a different location, it's a forced accompaniment. Well, that's the real question. What is a different location? That's right. So if we get back to that, it's a different location under the Hawkins standard. Hawkins, of course, is 40 to 50 feet, roughly the same distance we're dealing with here, in an open area in a parking lot. And Hawkins, based on that standard that we've all embraced. Well, it's from the van to the truck. And they said, you know, it need not necessarily be from one space to another space, but this was from a van to a truck. And forget the parking lot, it was from one location to another location. But the argument that they're dealing with, what the defendant is standing before the judges and saying there, is that there's no demarcation here whatsoever. There's no property line, there's no barrier, there's no nothing. I think the point you agreed with, if you take the flexible approach, there's no threshold issue, there's no property line, there's no lot lines or anything like that. It's really flexible on a case-by-case basis. That's right. And what Hawkins says is, if there were barriers or property lines, that would be a factor. The court explicitly says that. You're saying here there is a barrier. And here there is a barrier. That's what makes this case short. What's the barrier? The locked bathroom door. Well, if you were to assume that this is a Philadelphia row house, and you've got, you know, that's the front porch, and that's the kitchen. I mean, that's kind of the way the Philadelphia row houses are set up. You know, if someone was forced to go from the kitchen to the front porch, here it's like the bathroom, is it a different location? Right. It doesn't seem to be. And I think that under that flexible test, knowing the purpose of this guideline, which is to impose additional punishment where someone has been moved from a place of greater safety to a place of lesser safety, this is not a difficult matter where they've tried to secure themselves in a separate place within the building, and he's kicked in the door. So I would suggest, Your Honors, that when you go through these factors sequentially, that the district court did not err, that this was a different location. Certainly there was force. Certainly it was not clear error to say there was an accompaniment based on the stipulated facts. And it was for the purpose of facilitating the offense. It was the very purpose was to steal from the cash registers. If the focus of the argument below had nothing to do with the forced accompaniment, should we send it back for the court to, you know, specifically look at that? I mean, it did make a finding, but I don't know whether it was. It was stated. I wouldn't say that it was completely omitted. The overwhelming focus of the argument in the district court was on different location, but it was stated to the point that, as Your Honor mentions, the court felt compelled to address it and did. Is there any other example given in the commentary other than a bank robber forcing a bank teller from a bank into a getaway car? That's the only example given in the application note. Of course, that's the escape rather than facilitating the commission. That is. It could be both. But again, we have to look at the application note in full, which says it's forced accompaniment to a different location to facilitate the commission of the offense. My time is up, but I appreciate Your Honor's time. Thank you. Is the distance of the change of location something that should be entrusted to the discretion of the trial judge? Is the distance to be entrusted? The change of location we're talking about here. Is that distance something that should be under the flexible standard that we've been talking about? Is that something that should be entrusted to the sound discretion of the trial judge? As a factor. I'm not sure that I understand your question. The distance here was agreed upon that it was 34 feet, and I do believe that the distance is one factor among the totality to consider. The sufficiency of the change is what I'm getting at. Whether it's 20 or 40 or 10, and the district court says 18, I think that's enough. Here, I think that was... Or should we say a change of location however slight? That would be pretty small. That would be too small, I think, for the abduction enhancement. That's what I'm getting at, is a discretionary call. 30 feet moved with a gun at your head is enough. No, I think that's the over-mechanical applications that Hawkins advised against. And here, I think that Judge Goldberg's mistake was one of legal interpretation as to what the meaning of different locations means. And to respond to something that Mr. Zausmer raised... What does it mean, different locations? We believe that different locations should be read in the context of the abduction enhancement. It should not be divorced from the term abducted, nor should it be divorced from the idea of forced accompaniment. And Mr. Zausmer... All right, but what does it mean? How do we decide what is a different location? We have to look to whether there was an increase in harm to the victim based upon the two different locations. For example, in Hawkins, where you have movement from one spot in a parking lot towards the getaway vehicle, or in... Increase in harm. Is that in the guidelines? No, but that's how all of the cases have interpreted this guideline, that the abduction enhancement targets the elevation in harm experienced by the victim. And here, while we... If not the elevation, the fact that there is movement and there is forced accompaniment in and of itself is terrorizing. Is it not? I mean, there doesn't have to be an escalation of danger to the person. I would agree, Judge Rendell, that any robbery is terrorizing, and virtually every robbery involves some movement of the victim, and every robbery involves an element of compulsion. Yeah, but give me the... You know, coming up to the teller window and saying, give me all the money in the drawer. It's different from... You know, somebody's going with me to the cash register, you know, where I'm going to start shooting. There is a distinction there. My time has concluded. Keep going. Thank you. We'll give you another minute. However, that would then transform every robbery, where when the robber enters, for example, the bank, and someone's not conveniently located at the cash register, would elevate that to an aggravated robbery involving abduction. And that's simply not what the term abducted means. Here, we would ask that the court reverse the district court's finding and remand for resentencing. Anything else? Anything else? Thank you. Thank you. The case was very well argued.